McBurney *v.* Cutler.

---

McBURNEY and others *vs.* J. CUTLER and J. E. CUTLER.

A release may contain appropriate words as a bargain and sale, and if it does, it will operate as such, if supported by a pecuniary consideration; of which an acknowledgment thereof in the instrument is evidence.

In an action for trespass on lands the plaintiffs produced and read in evidence the second part of a deed of lease and release, conveying the lands to the persons under whom they claimed title. The defendants objected that the evidence of title was not sufficient, inasmuch as the lease was not produced; *Held,* that though the terms of the release were not stated, the court might fairly presume, from the fact that the instrument contained a covenant of warranty, that it was sufficient to pass the title, without the aid of the lease.

The recital of a lease, in a release, is sufficient evidence of the lease, as against parties claiming title under the grantee in the release.

Although secondary evidence may be given of the *contents* of a lost deed, yet parol proof of the *negotiations* which led to the giving of the deed, or of what was *agreed to be conveyed,* is inadmissible.

If, under any circumstances, proof of the bargain for a conveyance may be made, by way of showing the contents of the conveyance, such evidence is improper where the witness was but 12 years of age when, as he testifies, the deed was executed, and he was 71 years old when examined as a witness; and for a period of 30 years previous he had forgotten all about the deed; and could not tell one word that was in it.

It is not necessary, in order to prove the execution of an alleged lost deed, to show by a witness that he remembered having seen a seal on it. The fact may be shown by other and circumstantial evidence; and evidence that the instrument was executed, and intended and purported to convey lands, and of the declarations

McBurney *v.* Cutler.

of the grantor that he had conveyed his lands to the grantee, is proper for the jury to pass upon; and is sufficient to authorize them, if they believe it, to find that the instrument was under seal.

Where, in an action for trespass on land, the defendant sets up a claim of title under the person through whom the plaintiff claims, it is unnecessary for the plaintiff to prove title in such person. The defendant, by relying on him as a source of title, admits he had title.

A general exception to a charge of the court containing several distinct propositions, is not sufficiently specific to enable the party to make objections to particular propositions therein.

THIS was an action for trespass upon land, in cutting and carrying away timber. The defendants, by their answer, denied the facts stated in the complaint, and alleged that they were the owners of the lot of land described in the complaint; also that the same belonged to one McCoy, and that they entered by his authority, license and permission. The cause was tried at the Steuben circuit, in November, 1851, before Justice Johnson and a jury. It was admitted that the title to the land was originally in Oliver Phelps and Nathaniel Gorham, and that Ephraim Patterson was one of the six original proprietors of the town of Painted Post, in which the lands lay, by purchase from Phelps and Gorham. The plaintiff produced and read in evidence the second part of a deed of lease and release from Ephraim Patterson to Ichabod Patterson, dated Nov. 4, 1791, conveying the lands in question, with a covenant of general warranty, acknowledged July 1, 1817, and recorded July 21, 1817. It was proved that a portion of the land had been in the possession of Ichabod Patterson, and his heirs, claiming title to the whole, ever since the date of the deed. The plaintiffs having closed their evidence respecting the title to the land, the defendants' counsel objected that such proof of title was insufficient, on the ground that the deed from Ephraim Patterson to Ichabod Patterson was but a release, and purported to be founded upon a lease which was not produced. The objection was overruled. The plaintiffs proved the trespass as alleged in the complaint. The defendants claimed title to the land through Benjamin Eaton, and introduced evidence tending to show that Ichabod Patterson executed a deed of the lands to Eaton, in 1793, which deed was lost. The material parts of the

McBurney *v.* Cutler.

testimony are stated in the opinion of the court; the evidence is therefore omitted, here.

The justice charged the jury that there was no dispute that Ichabod Patterson had a good title to the land in dispute, by virtue of a conveyance from Ephraim Patterson by metes and bounds, and the only question was whether Ichabod Patterson had ever parted with his title : thus the burthen of proof of showing a conveyance by Ichabod Patterson lay on the defendants, and that they claimed under him; that land can only be conveyed by deed; that the deed must be under seal, and describe the land with sufficient certainty; that a deed describing lands as back lands would be void for uncertainty, unless there were some particular tract or parcel of land known and designated by that name; that it was not competent for a party not in the actual possession of land to establish a title by the mere admission of a former owner that he had executed a deed; that the fact of the execution and the delivery of the deed by such former owner must be established by some person who saw it executed and delivered, or by the existence at some time of such a deed, or by some other competent proof, independent of the mere admission of the former owners ; but that when such fact was established by other proof, the admission of such former owner was competent by way of corroborating the other evidence, and to make the particular piece and quantity conveyed more definite and certain; that unless the jury could find from the evidence before them that Ichabod Patterson had executed and delivered a conveyance of this identical piece of land in dispute, under seal, they must find a verdict for the plaintiffs ; that in determining the question of fact, whether such deed had been executed or not, the jury were at liberty to take into consideration the surrounding circumstances, the subsequent occupancy by the heirs of Patterson of a portion, with a claim to the whole, back to the town line, for so great a length of time, unmolested, as testified to by Hubbell. But if the jury were satisfied from all the evidence in the case that Ichabod Patterson did convey the land by deed, under seal, as claimed by the defendants, the defendants were entitled to their verdict. The counsel for the defendants except-

ed to the charge of the said justice and every part thereof, and requested the court to charge the jury, that to entitle a party claiming under a lost deed to recover, it is not necessary to show the metes and bounds mentioned in the deed, or how the land was described in it; if, from other proof, the jury are satisfied what land it conveyed, and that it conveyed the land in controversy; that if the deed conveyed the back lands, either by that or some other designation—and the lands known as back lands at the time were the lands north of the river farms, and between these farms and the town line—then the land conveyed was sufficiently certain; and if they covered the premises when the alleged trespass was committed, then they should find for the defendants.   That to prove the execution of a deed that was lost, and which had not been seen for many years, it was not necessary to prove by a witness that he remembered having seen a seal on it; that the word deed, imports an instrument under seal, and that proof by a witness that an instrument was executed, and intended and purported to convey lands, and proof of the declarations of Ichabod Patterson that he had conveyed his back lands to Eaton, was proper evidence for the jury to pass upon, and sufficient to authorize them to find that the instrument was under seal, if they believed the testimony of the witnesses.   The said justice declined so to charge as to either of the points above mentioned, and on the contrary charged, that in order to make the conveyance valid, there must be a particular lot or tract conveyed, which can be identified by metes and bounds known as such lands, or some other designation contained in the deeds by which the lands intended could be identified; to which refusal to charge as requested, and the charge as given, the defendants' counsel excepted.   The jury found a verdict for the plaintiffs.

*H. M. Hyde,* for the plaintiffs.

*Geo. T. Spencer,* for the defendants.

*By the Court,* T. R. STRONG, J.   It is stated in the bill of exceptions that the plaintiffs produced and read in evidence the second part of a deed of lease and release from Ephraim Patter-

son to Ichabod Patterson, dated November 4, 1791, conveying the lands in question, and containing a covenant of general warranty. When the plaintiffs closed their evidence in support of their title to the lands, the defendants' counsel objected that the evidence of title was not sufficient, on the ground that the lease was not produced, and on another ground which is not now relied on. As the terms of the instrument are not given in the bill of exceptions, the court cannot see that they are not sufficient to pass the title without the aid of the lease. It may, I think, fairly be presumed that they are so, in view of the fact that the instrument is represented as containing a covenant of warranty. A release may contain appropriate words as a bargain and sale, and if it does, will operate as such, if supported by a pecuniary consideration, of which an acknowledgement thereof in the instrument is evidence. (*Lynch* v. *Livingston*, 8 *Barb.* 463, 485. *Beddoe's Ex'r* v. *Wadsworth*, 21 *Wend.* 127. *Jackson* v. *Fish*, 10 *Johns*, 456.) The instrument should have been set forth, if it was desired on the part of the defendants to insist on the objection to the proof of the plaintiffs' title that the lease was not produced or proved.

But whether the plaintiff had proved title in Ichabod Patterson or not was unimportant, after the defendants, as they did on the trial, set up a claim of title under him. By relying on him as a source of title, the defendants admitted he had title

The recital of the lease in the release was, after it appeared the defendants claimed under Ichabod Patterson, sufficient evidence of the lease. (*Crane* v. *Lessee of Morris*, 6 *Peters*, 59. *Cowen & Hills Notes*, 1235, 6, 7.) Besides, under the circumstances of this case, the execution and loss of the lease might properly be presumed.

The plaintiffs deduced title from Ichabod Patterson, and the defendants traced their paper title back to Benjamin Eaton, and sought to prove that Patterson executed a deed to Eaton in 1793, embracing the lands in question, which deed was lost. A witness on the part of the defendants testified, that he worked for Eaton in his store and sold goods for him, and that Eaton took a conveyance from Patterson in that year ; that there had been

a good deal of talk about the land; that the witness boarded at Patterson's, and saw him sign the deed; and thereupon the defendants' counsel proposed this question : What was the negotiation that led to giving the deed ? which was objected to on the part of the plaintiff and excluded, and an exception was taken. The witness further testified, that after the deed was executed it was given to him to carry home, and he carried it home and put it in Eaton's drawer in the store, with the rest of his papers; that he saw the deed a number of times after that; and read it in 1799.   "I don't remember its contents, except that it was given for a piece of land on the north end of the farm he lived on; I don't recollect how much land it specified; I have no recollection of chains or links; I don't know what number of acres the deed specified; I think the deed specified the number of acres; I don't recollect what the consideration was in the deed.   I should think there was as much as one or two hundred acres— might have been more, I can't tell; I don't recollect whether it was the whole of the north end, or only part way."   The defendants' counsel here offered to show what the parties agreed to convey, and that the deed contained the land, and the amount agreed upon.   The plaintiffs' counsel objected to the evidence; the court sustained the objection, and the defendants' counsel excepted.   "I was 12 the year before the deed was given; can't tell one word that was in the deed; don't know that the word back was in the deed; whether it contained one acre or one thousand acres; don't know the lines or boundaries."   The witness was allowed to, and did, testify to declarations of Patterson as to what land he had conveyed.   He also testified that he was 71 years old, and that he had forgotten all about this deed for thirty years, until after this suit was commenced.

It is contended by the counsel for the defendants, that the negotiations and agreement for the conveyance of the land were competent evidence, as circumstances tending to show that a deed was given, and what its contents were.   So far as the fact of the giving of a deed is concerned, the witness having testified to it directly and positively, the proof of the fact by this witness would not have been strengthened by receiving the evidence,

McBurney v. Cutler.

and that of itself warranted its exclusion. But the question and offer assume that a deed was given, and it is manifest that the sole object of them was to prove its contents. The point to be established was that the lands in dispute were included in the deed. No question was made as to the sufficiency of the proof of loss. Was the evidence admissible to prove what the deed contained? If the deed had been in existence, and could have been found by the defendants, its production, and proof of its execution, would have been indispensable, in order to make title under it. If it had been produced, proof of prior negotiations, or of the bargain, would not have been competent, in reference to the understanding of the parties. All were merged in the deed, and by that the rights of the parties would have been determined. As it appeared that the deed was lost, the law allowed secondary evidence of its contents. But its *contents* were to be proved, and they were to govern as to all benefits under it. It was manifestly proper that clear proof on this point, such as would leave no reasonable doubt, should be required. All the reasons for requiring that the conveyance of the lands should be by deed, and making the deed the only evidence of the conveyance, if it could be produced, required, when secondary evidence was admissible, strict and pointed proof of its contents. The proof should be such as to secure as far as practicable the safety designed to be given by the written evidence. In *Tayloe* v. *Riggs*, (1 *Peters*, 591, 600,) Ch. J. Marshall says: "When a written contract is to be proved, not by itself but by parol testimony, no vague uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself. The substance of the agreement ought to be proved satisfactorily; and if that cannot be done, the party is in the condition of every other suitor in court, who makes a claim which he cannot support. When parties reduce their contract to writing, the obligations and rights of each are described, and limited, by the instrument itself. The safety which is expected from them would be much impaired, if they could be established upon uncertain and vague impressions made by a conversation antecedent to the reduction of the agreement."

In *Remer* v. *The Bank of Columbia,* (9 *Wheat.* 581, 700,) Thompson, J., says : "Proof of the contents of a lost paper ought to be the best the party has it in his power to produce, and, at all events, such as to leave no reasonable doubt as to the substantial parts of the paper." In *Metcalf* v. *Van Benthuysen,* (3 *Comst.* 424, 430,) Gardiner, J. says, that "a title to lands, duly authenticated by written evidence, ought not to be set aside on the assumption of a previous lost conveyance, except upon clear proof by the claimant of the execution and existence of the supposed deed, and so much of its contents as will enable the court to determine the character of the instrument." (*Hampton* v. *Windham,* 2 *Root,* 199. *United States* v. *Britton,* 2 *Mason,* 468. *Cowen & Hill's Notes,* 1234. *Hodges* v. *Hodges,* 3 *Cushing,* 456.) These views are decisive, that proof of the negotiations which led to the giving of the deed were properly rejected ; and, I think, they show that evidence of what was agreed to be conveyed was inadmissible. If, under any circumstances, proof of the bargain for a conveyance might be made, by way of showing the contents of the conveyance, I am satisfied that such proof by the witness in this case was rightly excluded. The witness was but 12 years of age when, as he testifies, the deed was executed; he was 71 years old when he was examined as a witness ; for a period of thirty years prior to this suit he had forgotten all about the deed ; and he could not tell one word that was in the deed. To have allowed his testimony to be received as to the bargain, as proper to be considered by the jury, would have been trifling with the rights of the plaintiff.

The declarations of Ephraim Patterson, after his conveyance, or descriptions in his conveyances of other lands, which were nothing more than mere declarations, could not affect the rights of persons claiming under him. Besides, such evidence was wholly irrelevant and immaterial upon the question as to the contents of the alleged lost conveyance of Ichabod Patterson to Eaton. And the same remark is applicable to the evidence offered of the payment of taxes by McCoy on the lands in dispute, the proceedings for the admeasurement of dower,

McBurney v. Gutler.

and the assessment by one of the plaintiffs of the lands to McCoy. There was no other point to which the evidence was admissible. No claim of title by possession was made, and no foundation was laid, by proof of adverse possession by Eaton and those claiming under him, for a presumption of a conveyance from Patterson to Eaton, which this evidence might have aided. Strict proof of the fact of such a conveyance, or if lost, of its contents, was called for, and the evidence excluded was not pertinent either to the existence or the terms of a conveyance.

The exception to the charge is not sufficiently specific, to enable the defendants' counsel to make the objections to it which are now insisted on. (*Haggart* v. *Morgan*, 1 *Seld.* 422.) But, I am satisfied, those objections are not well founded.

The first of the two propositions upon which the justice was requested to charge the jury, presents nothing material on which he did not charge in accordance with it. But, in respect to the other proposition, I have come to the conclusion that the instruction desired should have been given. I do not perceive that it contains any thing substantially erroneous. It certainly was not necessary, in order to prove the execution of the alleged lost deed, to prove by a witness that he remembered having seen a seal on it; the fact might be shown by other and circumstantial evidence; and evidence that the instrument was executed, and intended and purported to convey lands, and, in connection with it, of the declarations of Ichabod Patterson that he had conveyed his back lands to Eaton, was, I am satisfied, proper for the jury to pass upon, and I think it was sufficient to authorize them, if they believed it, to find that the instrument was under seal. The propriety of asking this instruction was apparent. The jury had been advised that the burthen of proof, to show a conveyance by Ichabod Patterson, lay on the defendants; that land could be conveyed only by deed, and that the deed must be under seal; and the necessity of a seal was in other parts of the charge prominently presented to the attention of the jury. The defendants' counsel might well regard it of importance that the jury should be advised as to the

kind and amount of proof they should require on that point; and I think he was entitled to claim the instruction requested.

The result in the case might not have been affected by the instruction, if it had been given, but the court cannot see that it would not have been, and are not therefore at liberty to overlook the error.

A new trial must be granted, with costs to abide the event.

[CAYUGA GENERAL TERM, June 5, 1854.  *Johnson, T. R. Strong* and *Welles,* Justices.]